IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

DWIGHT J. PORTER,

      Plaintiff,

v.                                  CASE NO. 5:10-cv-206-RS-GRJ

COLONEL BAXTER, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

      Pending before are the following motions: (1) Defendants, Simmons, Durance, And Lee's Motion to Dismiss Or, In Alternative, Motion For Summary Judgment (Doc. 40); (2) Defendant Dudley's[1] Motion To Dismiss Or, In The Alternative, Motion For Summary Judgment (Doc. 44); and (3) Defendants Baxter and Tyus'[2] Motion To Dismiss Or, In The Alternative, Motion For Summary Judgment. (Doc. 48.) The motions are based upon Plaintiff's alleged failure to exhaust his administrative remedies with respect to the claims in the Third Amended Complaint. Plaintiff filed identical responses to the first two motions but did not file a response to the third motion. (Docs. 46 and 50.) Accordingly, the three motions are ripe for review.

      For the following reasons, Defendants, Simmons, Durance, And Lee's Motion to

---

[1] Plaintiff misnamed Defendant Assistant Warden Dudley as "Douglas" in his Third Amended Complaint. Plaintiff similarly misnamed Defendant Captain Tyus as "Tyson" in his Third Amended Complaint. The Court will refer to each Defendant by his proper name.

[2] Defendants Dudley, Baxter and Tyus were all served after the other three Defendants in this case were served due to problems locating Defendant Baxter and the errors with respect to utilizing the correct first names for Defendants Dudley and Tyus in the Third Amended Complaint. (Docs. 28, 29 and 37.) This necessitated the filing of three separate motions to dismiss by Defendants' counsel. However, all three motions are identical and are based upon Plaintiff's alleged failure to exhaust his administrative remedies with respect to the claims presented in the Third Amended Complaint.

Dismiss Or, In Alternative, Motion For Summary Judgment (Doc. 40) is due to be granted as to Defendants Durrance and Simmons but is due to be denied with respect to Defendant Lee; Defendant Dudley's Motion To Dismiss Or, In The Alternative, Motion For Summary Judgment (Doc. 44) is due to be denied; and Defendants Baxter and Tyus' Motion To Dismiss Or, In The Alternative, Motion For Summary Judgment (Doc. 48) is due to be granted as to Defendant Tyus and is due to be denied as to Defendant Baxter.

## I.  Background

Plaintiff is a prisoner in the custody of the Florida Department of Corrections ("FDOC") at Calhoun Correctional Institution in Blountstown, Florida.  Defendants Assistant Warden Dudley, Colonel Baxter, Captain Lee, Officer Simmons, Pamela Durrance and Captain Tyus are all employed by the FDOC at Graceville Correctional Facility ("Graceville CF") in Graceville, Florida.  Plaintiff is currently operating pursuant to a Third Amended Complaint.  (Doc. 25.)

According to the factual allegations in the Third Amended Complaint, Plaintiff was involved in a car accident in 2005, before he entered FDOC custody, when the sport utility vehicle he was riding in rolled over.  Plaintiff suffered a dislocated left shoulder as a result of the accident, and still has issues with his shoulder to this day. On October 29, 2007, shortly after Plaintiff entered FDOC custody, he arrived at Graceville CF and was assigned to a job in food services, working in the kitchen. Plaintiff's job in the kitchen consisted of scraping food off trays into a machine, which required excessive use of his left shoulder and caused Plaintiff severe pain.  Plaintiff attempted to explain to Defendants Colonel Baxter, Pamela Durrance and Assistant

Warden Dudley the severe pain his job assignment caused him but all three ignored Plaintiff's requests for an alternate job placement.

In May 2008, Plaintiff declared a medical emergency due to swelling in his left shoulder.  He spent two days in the infirmary, during which time he was treated by a doctor and given pain medication and a thirty day medical pass excusing him from work in the kitchen.  Later that month, Plaintiff showed his medical pass to Officer Simmons after Plaintiff had again declared a medical emergency due to the pain in his left shoulder. Despite being presented with the pass, Officer Simmons ordered Plaintiff to sweep the floor, which Plaintiff alleges was covered in grease.  While sweeping the floor, Plaintiff slipped on the grease and hit his head on the floor, knocking him unconscious and further aggravating his left shoulder injury.

In July 2008, Defendant Pamela Durrance ordered Plaintiff to return to his work assignment in the kitchen.  Because returning to his work assignment would continue to cause him severe pain, Plaintiff told Durrance he was going to write an informal grievance in response to her command to return to work.  In response to Plaintiff's threat to file an informal grievance, Durrance called Defendants Colonel Baxter, Assistant Warden Dudley and Captain Lee to the kitchen.  Plaintiff alleges that Baxter, Lee and Dudley threatened Plaintiff and stated that they would "bust his head to the white meat and kick him asleep" if Plaintiff refused to work or filed any grievances. Plaintiff further alleges Baxter, Lee and Dudley are known as the "good old boy gang" around Graceville C.I. and have a reputation for beating inmates.  Plaintiff apparently has witnessed such beatings.

In August 2008, Plaintiff was called to an unspecified captain's office at Graceville CF, where Defendants Baxter, Dudley and Lee were waiting for him.  The

three allegedly "roughed the Plaintiff up" by twisting Plaintiff's injured left arm behind his back, choking him and throwing him to the floor.  Defendant Tyus then entered the office and pulled a rope tied into a hangman's noose out of a bag Tyus was holding, called Plaintiff a racial epithet and then threatened to hang Plaintiff.  Plaintiff was told he would be killed if he told anyone about the incident in the captain's office.

Towards the end of August, Plaintiff was again approached by Defendants Baxter, Lee and Dudley.  Baxter, Lee and Dudley told Plaintiff they would beat him to death if he filed any more grievances.  On December 13, 2008, Plaintiff's job assignment was changed from the kitchen to the position of houseman.

Plaintiff claims the Defendants violated his First, Fifth, Eighth and Fourteenth Amendments rights under the United States Constitution.  Plaintiff seeks compensatory and punitive damages against the Defendants.

## II.  The Motions to Dismiss and Plaintiff's Response

In the three Motions To Dismiss Or, In the Alternative, Motion For Summary Judgment filed by the Defendants, the six Defendants seek dismissal of Plaintiff's Third Amended Complaint on the grounds that Plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

Attached to the first motion to dismiss is an affidavit of Rebecca Padgham, a Management Analyst I with the FDOC's Bureau of Inmate Grievance Appeals.  (Doc. 40 Exh. A.)  Ms. Padgham attests that her review of the FDOC's grievance records reflects Plaintiff only filed one grievance appeal to the Secretary of the FDOC.  A copy of this grievance appeal, which is attached to Ms. Padgham's affidavit, reflects it concerns Plaintiff's query to FDOC staff regarding the cost of copying his medical records.  (*Id.* at

Exh. A-1.)  In his responses to the motions to dismiss, Plaintiff states he did not exhaust his administrative remedies with respect to the claims he seeks to advance in this case because he was threatened by several of the Defendants if he complained or filed any grievances.  (Docs. 46 and 50.)  Accordingly, Plaintiff contends that his failure to comply with the PLRA's administrative exhaustion requirement should be excused as unavailable to him under *Turner v. Broadside*.  541 F.3d 1077 (11th Cir. 2008).

## III.  DISCUSSION

### A.    *Exhaustion under the PLRA*

The PLRA requires a prisoner to exhaust all available administrative remedies before filing an action challenging prison conditions.  "This requirement is a 'pre-condition to suit' that must be enforced even if the available administrative remedies are 'futile or inadequate.'" *Logue v. Pearson,* No. CV410-240, 2011 U.S. Dist. LEXIS 66950, at *2-3 (S.D. Ga. 2011)*(citing *Harris v. Garner,* 190 F.3d 1279, 1285-86 (11th Cir. 2005)).  Exhaustion is mandatory under the PLRA, and unexhausted claims are not permitted.  *See Jones v. Bock,* 549 U.S. 199, 211 (2002).

Further, the PLRA's exhaustion requirement contains a procedural default component; prisoners must comply with the applicable deadlines, or good-cause standards for failure to comply, contained in the administrative grievance procedures. *Johnson v. Meadows*, 418 F.3d 1152, 1158 (11th Cir. 2005).  "'[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating. . . . [T]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Id*. (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024-25 (7th Cir. 2002)).

To exhaust administrative remedies in Florida, a prisoner in FDOC custody must complete the administrative review process established under regulations promulgated by the Secretary of the FDOC.   FLA. STAT. ANN. § 944.09(1)(d) ("The department has authority to adopt rules ... to implement its statutory authority. The rules must include rules relating to ... [g]rievance procedures which shall conform to 42 U.S.C. § 1997e."). Under the administrative review process established by the Secretary of the FDOC, a prisoner must: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Secretary of the FDOC.  *Chandler v. Crosby*, 379 F.3d 1278, 1288 (11th Cir. 2004)(citing FLA. ADMIN. CODE ANN. §§ 33-103.001 to -103.019*).  Once a prisoner has completed this process, he then has properly exhausted his administrative remedies. *Id.*

In the Eleventh Circuit, the defense of failure to exhaust under the PLRA is considered a matter in abatement under Fed. R. Civ. P. 12 and thus is treated like a defense of lack of jurisdiction.  *Bryant v. Rich,* 530 F.3d 1368, 1374, 1376 (11th Cir. 2008).  Deciding a motion to dismiss for failure to exhaust administrative remedies requires a two-step process as established in *Turner v. Burnside,* 541 F.3d 1077, 1082 (11th Cir. 2008).  The Court first "looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes plaintiff's version of the facts as true.  If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed."  *Id.* at 1082.  If the complaint is not subject to dismissal through the first step, the Court "proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion."  *Id.*

*Turner v. Broadside* also established, however, that an inmate is not required to grieve a "breakdown in the grievance process" because the PLRA only requires that a prisoner exhaust his "available administrative remedies." *Turner*, 541 F.3d at 1083-84 ("[I]t is possible for retaliation or the threat of retaliation to make administrative remedies unavailable to an inmate."). In the context of retaliation or threatened retaliation, the *Turner* court concluded:

> We conclude that a prison official's serious threats of substantial retaliation against an inmate for lodging or pursuing in good faith a grievance make the administrative remedy "unavailable," and thus lift the exhaustion requirement as to the affected parts of the process if both of these conditions are met: (1) the threat actually did deter the plaintiff inmate from lodging a grievance or pursuing a particular part of the process; and (2) the threat is one that would deter a reasonable inmate of ordinary firmness and fortitude from lodging a grievance or pursuing the part of the grievance process that the inmate failed to exhaust.

*Id.* at 1085. In order to successfully excuse a failure to exhaust more than mere threats are normally required. Generally to excuse exhaustion an inmate must allege both threats of retaliation as well as the use of physical force in response to the filing of grievances. *See*, *e.g.*, *Hemphill v. New York*, 380 F.3d 680, 689 (2d Cir. 2004)(noting that if inmate was assaulted and threatened to keep him from complaining, exhaustion should be excused); *Kaba v. Stepp*, 458 F.3d 678, 684-86 (7th Cir. 2006)(exhaustion could be excused where prisoner was threatened with beating for filing grievances and threat was carried out).

## B.   Plaintiff's Grievances and Grievance Appeals

Plaintiff filed a number of informal and formal grievances with the Warden and other administrators at Graceville CF, some of which are included as attachments to his Third Amended Complaint. (Doc. 25 Exhs. A1-A9, C.) Several of the grievances concerned his fall on the grease in the kitchen floor in August 2008. (*Id.* at A1-A3, A5.)

Another grievance concerns an incident on August 6, 2008 in which Plaintiff claimed he was questioned and harassed in response to a grievance he had filed, while others simply state more generally that Plaintiff was being harassed.  (*Id.* at A4, A8.)

As previously noted, Rebecca Padgham, a Management Analyst I with the FDOC's Bureau of Inmate Grievance Appeals, attests in an affidavit that her search of the FDOC's grievance records reflects Plaintiff only filed one grievance appeal to the Secretary of the FDOC.  (Doc. 40 Exh. A.)  This grievance appeal concerned the cost of copying Plaintiff's medical records.  (*Id.* at Exh. A-1.)

Plaintiff does not dispute his only successfully exhausted claim was contained in the single grievance appeal concerning the cost of copying his medical records.  Instead, Plaintiff contends that his failure to exhaust his claims in the Third Amended Complaint should be excused from the PLRA's exhaustion requirement because he was threatened by and physically assaulted by the Defendants in response to the grievance he actually filed and in response to his stated intention to pursue the grievance process and file other grievances.

## C.   *Legal Analysis*

There is no dispute Plaintiff did not successfully exhaust all of the claims in the Third Amended Complaint.  Because Plaintiff contends the Defendants rendered his administrative remedies unavailable by means of physical force and threats of physical force, the Court must determine as to each Defendant whether Plaintiff should be excused from the PLRA's exhaustion requirement under *Turner v. Burnside*.

### 1.   **Defendants Baxter, Lee and Dudley**

In Plaintiff's Third Amended Complaint and in his responses to the motions to dismiss, Plaintiff alleges that he was physically assaulted and was threatened twice with

further physical abuse by Defendants Baxter, Lee, and Dudley.  According to Plaintiff's sworn response, Defendants Baxter, Lee and Dudley threatened to "bust his head to the white meat and kick him asleep if he refused to work" when he threatened to file a grievance against Defendant Pamela Durrance.  Plaintiff was later approached by Defendants Baxter, Lee and Dudley in late August 2008, when the three threatened to beat Plaintiff to death if he filed any further grievances.  Plaintiff avers that this group of Defendants previously assaulted him earlier that month and Plaintiff also had observed them "beat-up" other inmates.

Under *Turner* at this stage of the proceedings, the Court is required to take Plaintiff's version of the facts as true.  Plaintiff has described specific threats made by Defendants Baxter, Lee and Dudley. Plaintiff further alleges that as a result of these threats he actively refrained from pursuing further grievances.

The Court therefore concludes at this stage that a reasonable inmate would be deterred by a threat to "bust [the inmate's] head open" and a threat to beat the inmate to death if he filed any grievances, made by defendants, who the inmate alleges had previously assaulted the inmate for making grievances.  These allegations are sufficient to meet the two step test set forth in *Turner* for determining if serious threats of substantial retaliation deterred an inmate from lodging or pursuing in good faith a grievance.

Accordingly, the Court concludes that Plaintiff has alleged sufficient facts to demonstrate that the administrative remedies provided to a FDOC inmate were not available to him with regard to his claims against Defendants Baxter, Lee and Dudley. The motion to dismiss, filed by Defendants Baxter, Lee and Dudley for failure to exhaust administrative claims is therefore due to be denied.

2.      **Defendants Tyus, Simmons and Durrance**

Plaintiff's failure to exhaust his administrative remedies against Defendants, Tyus, Simmons and Durrance, is a different story.  The only allegation in the Third Amended Complaint against Officer Simmons is that Simmons forced Plaintiff to mop the grease-covered kitchen floor in response to Plaintiff's complaint that his work assignment in the kitchen was causing him pain in his injured left shoulder. Further, while Officer Tyus allegedly pulled a rope tied in a hangman's noose out of a bag and displayed it to Plaintiff and called Plaintiff a racial epithet, there is no allegation that the actions of either Officer Simmons or Officer Tyus had anything to do with Plaintiff's filing of past grievances or plans to file future grievances.  Accordingly, because there are no facts alleged which would excuse Plaintiff's obligation to exhaust administrative remedies – and Plaintiff does not dispute that he failed to exhaust all of the available administrative remedies – Defendants Simmons and Tyus' motion to dismiss should be granted.

With respect to Defendant Pamela Durrance, Plaintiff alleges he told Defendant Durrance he was going to file an informal grievance against her because she forced him to work despite Plaintiff's medical pass excusing him from work. According to Plaintiff, Defendant Durrance then called Defendants Baxter, Lee and Dudley, who threatened to beat-up Plaintiff if he filed a grievance.  Defendant Durrance is the food service manager at Graceville CF, while Colonel Baxter, Assistant Warden Dudley and Captain Lee were all fairly senior correctional officials, making it highly unlikely or even plausible that Durrance had the authority to order them to apply force against Plaintiff. Accordingly, the Court concludes a reasonable inmate would not likely have experienced fear of retaliation from Durrance.  In short, forcing Plaintiff to continue to

work despite Plaintiff's pain in his shoulder and then informing higher ranking officials of Plaintiff's intent to file an informal grievance against Durrance is simply not sufficient to excuse Plaintiff from his obligation to pursue all available administrative remedies. Accordingly, Simmons, Tyus and Durrance's motion to dismiss is due to be granted.

## IV.  Recommendation

In light of the foregoing, it is respectfully **RECOMMENDED** that: (1) Defendants, Simmons and Durance's, Motion to Dismiss be **GRANTED** but Defendant Lee's Motion to Dismiss (Doc. 40) be **DENIED**; (2) Defendant Dudley's Motion To Dismiss (Doc. 44) be  **DENIED**; and (3) Defendants Tyus' Motion To Dismiss be **GRANTED** but Defendant Baxter's Motion to Dismiss (Doc. 48) be **DENIED**. It is further **RECOMMENDED** that Plaintiff's claims against Defendants Simmons, Durrance and Tyus be **DISMISSED** for failure to exhaust administrative remedies and that this case be recommitted to the undersigned for further proceedings against Defendants Lee, Dudley and Baxter.

**IN CHAMBERS**  this 30th day of January 2012.

*s/Gary R. Jones*

GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**